No. 13,236.

UNION OIL COMPANY VS. L. H. MARRERO, SHERIFF AND EX-OFFICIO TAX
COLLECTOR, ET AL.

### SYLLABUS.

1. So much of Section 11, of Act 171, of 1898, as undertakes to require the payment of license for the business of manufacturing cotton seed oil cake, and cotton seed meal, is repugnant to the provisions of Article 229 of the Constitution, and is therefore void. These products are not to be regarded, for the purpose of the license law, as mere incidental resultants in the manufacture of cotton seed oil.

2. Where a manufacturer is also engaged in business as a wholesale dealer, and buys and sells products other than those manufactured by himself, he is within the law, requiring a wholesale dealer's license, as well with respect to the products manufactured by him, and sold in the course of that business, as with respect to products bought by him on the market and so sold, and he owes the license upon the basis of his gross receipts from all sales.

3. The business of refining crude cotton seed oil is not a manufacturing business within the meaning of the provisions of Article 229 of the Constitution, or within the meaning of the Statute law imposing a license tax on the business of "manufacturing cotton seed oil."

APPEAL from the Twenty-First Judicial District Court for the Parish of Jefferson. *Rost, J.*

*T. M. Miller* for Plaintiff and Appellee.

*Robert J. Perkins* for Defendant and Appellant.

The opinion of the court was delivered by

MONROE, J. The evidence shows that the plaintiff paid $8750.00 for State and parish licenses (being $4375.00 for each) for the year 1899, and that said payment was made upon the basis of the following statement of the business done in 1898, to-wit:

### GRETNA REFINERY.

Receipts from sales of refined oil....................$1,657,524.38
Receipts from sales of refined soap................... 85,749.51
Receipts from miscellaneous sources.................. 1,380.54

Total ........................................$1,744,654.48

*Deduct*—

Crude oil transferred from Union Oil Company's
    Crescent Mill ............................................$ 248,754 11.

Crude oil purchased from Union Oil Company's in-
    terior mills—

Vidalia mill, Hamilton mill, Monroe mill, Bunkie mill.  221,556 00
    On which amount, taxes have been paid.

Soap values, exempt from taxation......................   85,749 51

    Balance ...........................................$1,188,594 81.

Crescent Mill, total receipts ...........................  612,603 22

    Grand total .......................................$1,801,198 03.

The payment appears to have been made agreeably to section 11, of
Act 171, of 1898, which reads: "That for carrying on each business
of manufacturing cotton seed oil, oil cake, or cotton seed meal, the
license shall be based on the gross annual receipts, as follows    *    *

"*Fourth Class:* When the said gross annual receipts are one mil-
lion, seven hundred and fifty thousand dollars, or more, and less than
two million dollars, the license shall be four thousand three hundred
and seventy-five dollars ($4375.00)."

It further appears that the payment was made by a representative
of the plaintiff, who was instructed to pay what was legally due; and
that he made the payment in anticipation of legal advice, which had
been asked, as to part of the amount, and against such advice, as to
the balance, in order to avoid incurring the penalty of delinquency;
and that, soon afterwards, the plaintiff applied to the tax collector,
claiming that there had been an overpayment, in error; whereupon,
that officer communicated with the State Auditor, and by his author-
ity, retained the amount received for the State in order that the
matter might be inquired into, and the error, if any should be found,
corrected. The amount collected for the account of the Parish, had
been turned over to the police jury, but that body has been made
party defendant, and makes no objection on the ground of mis-
joinder.

It is also shown that the business done at the Gretna refinery con-
sists of refining oil (some of which is manufactured by plaintiff, at
other establishments, but the greater proportion of which is bought

on the market), of manufacturing soap, and of selling the oil, so refined, and the soap, so manufactured, and other products.

Plaintiff's gross receipts from all sales are shown to be $2,108,-503.44. Of this amount, it appears that, $1,744,654.43 is received from sales made at the refinery, including $248,754.00 received from sales of oil manufactured at, and transferred from, the Crescent Mill; $221,556 received from sales of oil manufactured at, and transferred from, other mills owned by the plaintiff; and also including $85,749.51 received from the sale of soap manufactured at said refinery. The remaining $363,849.11 (being the difference between the $2,108,503.44 and the $1,744,654.43 as stated above) represent the proceeds of sales of oil cake, meal, and linters, manufactured at the Crescent Mill. Whether these sales are made at the mill or the refinery does not clearly and affirmatively appear.

The position of the plaintiff, in regard to its liability for licenses, may fairly be stated as follows, to-wit:

That it should pay a manufacturer's license, based on the oil product of the Crescent Mill, under section 3 of Act 171 of 1898, and not under section 11 of that Act; that it is exempt from the payment of a manufacturer's license with respect to the oil cake, meal, and linters, manufactured at said mill, and that said section, in so far as it undertakes to impose such a license, is unconstitutional; that it is also exempt from the payment of any license with respect to the soap manufactured at the refinery; and that, as to the oil refined, and sold, at said refinery, it is not liable as a manufacturer, but as a wholesale dealer.

The judge a quo found the plaintiff liable for a manufacturer's license, with respect to the oil, and also the oil cake and meal, manufactured at the Crescent Mill; holding that the latter products were incidental to the manufacture of the oil. The receipts from the sale of the oil, oil cake, and meal, amounting to $612,603.22, the license was fixed, under the "Ninth Class", in section 11 of the Act, at $1250.00.

The learned judge also found the plaintiff liable for a wholesale dealer's license based on receipts from sales made at the refinery, amounting to $1,744,654.43, after deducting therefrom $248,549.11, as proceeds of sales of oil transferred from the Crescent Mill; $221,-556.00 as proceeds of sales of oil transferred from plaintiff's other mills; and $85,749.51 as proceeds of sale of soap manufactured at the

refinery; the receipts upon which the license is based being $1,188,-594.81, and the license being fixed under the eleventh class, in section 6 of the Act, at $300, thus making the total for which plaintiff is held bound, to each the State and the parish, $1550.00.

From the judgment thus rendered, the defendants, the sheriff and tax collector, and the police jury, have appealed; and the plaintiff has filed an answer praying that the judgment be increased in its favor. The able counsel who represents the appellants informs us, in his brief, that the appeal was taken "largely because the sheriff is loath to return an amount equal to $2825.00 which he has collected on behalf of the State, without a judgment of the highest court of the State", etc.

The liability for the manufacturer's license, based on the oil product of the Crescent Mill, being admitted, the question which remains, in that connection, is, whether such license is exigible under section 3, or section 11, of the statute. The provisions in question read as follows:

"Sec. 3. Be it further enacted, etc.

## "MANUFACTURERS.

"Par. 1. That for carrying on each business of manufacturer subject to license under article 229 of the Constitution, the license shall be based on the gross annual receipts of the business, as follows, to-wit:

\*  \*  \*  \*  \*  \*

"Fifteenth. When the said receipts are two hundred thousand dollars, or more, and under three hundred thousand dollars, the license shall be one hundred and forty dollars ($140).

\*  \*  \*  \*  \*  \*

"Section 11. Be it further enacted, etc.  \*  \*  \*  That for carrying on each business of gas-light, electric light, water works,  \*  \*  \* manufacturing cotton seed oil, oil cake, or cotton seed meal, the license shall be based on the gross annual receipts, as follows, to-wit: (and then follow twenty classes).

\*  \*  \*  \*  \*  \*

"*Eleventh Class.* When the said gross annual receipts are two hundred thousand dollars, or more, and less than two hundred and fifty thousand dollars, the license shall be five hundred dollars ($500)."

In this connection, it may be remarked that article 229 of the Constitution authorizes the imposition of license taxes, and, at the same time provides for the exemption therefrom of "manufacturers other than those of distilled, alcoholic, or malt liquors, tobacco, cigars, and cotton seed oil."

It is not easy to understand why, since all manufacturers subject to license under the Constitution, were included in the general terms of section 3 of the Act, they should again be specifically provided for in section 11. We must accept the statute, however, as we find it, and, doing so, we are of opinion that for the reason that section 11 is specific, whilst section 3 is general, in its terms; and for the further reason that section 11 follows, while the other precedes, section 11 must be held to control, and therefore, that, upon the gross annual receipts, from the sale of oil manufactured in the Crescent Mill, amounting to more than two hundred thousand, and being less than two hundred and fifty thousand dollars, the plaintiff is liable for a license of $500.00.

We are unable, however, to concur in the views expressed by the District Judge that cotton seed cake and cotton seed meal, are to be regarded, for the purposes of the present question, as merely incidental to the manufacture of cotton seed oil. The evidence shows that the whole product of the Crescent Mill yields $612,603.22, and that, of this amount, $248,754.00 represents the proceeds of the sale of oil, whilst $363,849.11 represents the proceeds of the sale of the other products mentioned. These different products,—the oil, the cake, and the meal, result from the subjection of the cotton seed to certain processes of manufacture, which are identical only up to a certain point. It is sufficient, however, for the present purposes, to say, that they are all resultant from a manufacturing process; that, under the Constitution, it is competent to impose a license tax upon a manufacturer with respect to one, and that it is not competent to impose such tax, with respect to the others, and hence, that so much of section 11, of Act 171 of 1898, as imposes a license tax for the manufacture of cotton seed cake, and cotton seed meal, is repugnant to the Constitution, and void. Manufacturers of soap are also within the exemption of the Constitution, and the statute makes no attempt to impose a license tax upon them.

The next question to be considered is, whether the plaintiff should pay a license, as manufacturer for the business of refining oil, con-

ducted at its Gretna refinery? It is shown that no seed is crushed at this establishment, the business there conducted consisting in refining the crude oil transferred from plaintiff's mills, where the crushing is done, and obtained elsewhere, by purchase, and in making sales.

The process of refining is thus described by the first Vice-President of the plaintiff company:

"We buy crude cotton seed oil, which is the color—a dark red color, and, in the process of refining, we use caustic soda, which blends with the red coloring matter and is deposited in the bottom. The oil is then a straw color, being free from sediment and other impurities. We then, by heat, treat the oil with hard fuller's earth, and other chemicals ferment to bind the color and improve the odor. The coloring matter deposited at the bottom of the tank is called soap stock, and, with it, we make soap. The yellow oil is then ready for the market and is sold, in barrels or tank cars."

Under the decision of this court in the matter of *The State vs. American Sugar Refining Co., 51 Ann., 562,* and the authorities there collated, the process thus described is not a manufacturing process within the meaning of the constitutional and statute law upon the subject of licenses.

The final question is, as to plaintiff's liability as a wholesale dealer.

Where a corporation is engaged in a manufacturing business, which is exempt from the license tax, and confines itself to the sale of the products manufactured by it, the business of selling such products, so manufactured, may well be considered as covered by the exemption accorded to the manufacturer. Where, however, as in this case, the corporation, in addition to its manufacturing plants, maintains another, and distinct, establishment, where it is engaged in the business of a wholesale dealer (selling other than its own products), which is not exempt from the license tax, it must, necessarily, pay the license imposed upon such business; and the amount of that license, under the law, is regulated by the gross receipts of the business. If, then, the corporation chooses to put into this business, of wholesale dealer, for which a license is required, products, as a manufacturer of which it is exempt from license, such a course does not, as far as we can discover, render it any the less liable for the license as wholesale dealer, nor does it change the law establishing the basis upon which that license is fixed. Or, to put the proposition in other

language, if the manufacturer confined himself, so far as the business of buying and selling is concerned, to buying raw material, which he converts, by the process of manufacture, into something else, and selling such product, his buying and selling is legitimately a part of his business of manufacturer; but when, in addition to the, business of manufacturer, he conducts a distinct business, of buying and selling products or merchandise not manufactured, or intended to be manufactured, by him, then that distinct business is regulated by its own law and no part of it is properly part of the other distinct business of manufacturer.

Under this view, the plaintiff should be held liable for a wholesale dealer's license based on gross receipts exceeding $2,000,000, and not exceeding $2,500,000 (Sec. 6, class nine, Act 171, 1898, p. 393), the amount of which is fixed at $550.00. This being added to the $500 for which it is liable for license as manufacturer, makes a total liability to each, the State and parish, of $1050, and entitles it to be reimbursed the difference between that amount and the $4375 paid to each of said defendants.

It may be remarked here that it appears from the record, that the plaintiff has agreed to pay the costs of the lower court.

It is therefore ordered, adjudged and decreed that the judgment appealed from be annulled, avoided and reversed, and it is now ordered, adjudged and decreed that the plaintiff, the Union Oil Company, have and recover judgment against the defendant, L. H. Marrero, sheriff and tax collector, in the sum of $3325.00, and against the defendant, the Parish of Jefferson, in the sum of $3325.00; and that said plaintiff do further have judgment against said Marrero, sheriff and tax collector, directing that he take up the licenses issued to the plaintiff for the year 1899, and issue, in place thereof, State and parish licenses for said year, in accordance with the views expressed in this opinion. It is further ordered that the defendants pay the costs of the appeal and that plaintiff pay the costs of the lower court.

The Chief Justice partially dissents from the views expressed in this opinion.