## GLOSTER OIL WORKS *v.* BUCKEYE COTTON OIL COMPANY.

### [40 South. Rep., 225.]

1. SALES. *Defenses. Failure of seller to comply with law.*

   In an action for breach by the buyer of a contract for the sale of cotton seed, it is a defense that plaintiff did not have the seed, had never paid the privilege tax imposed by law on cotton-seed buyers, and therefore could not buy cotton seed without violating the law.

2. COTTON-SEED BUYER. *Who is. Laws* 1898, *secs.* 25, 26, *pp.* 14, 15.

   A corporation which entered into a contract for the sale of cotton seed, which it could furnish only by buying them in the open market, is a cotton-seed buyer within Laws 1898, secs. 25, 26, pp. 14, 15, requiring persons engaged in that business to pay a privilege tax.

FROM the circuit court of, first district, Hinds county.

HON. DAVID M. MILLER, Judge.

The Gloster Oil Works, the appellant, was plaintiff in the court below; the Buckeye Cotton Oil Company, the appellee, was defendant there. From a judgment in defendant's favor the plaintiff appealed to the supreme court. The facts are stated in the opinion of the court.

*McWillie & Thompson,* for appellant.

Section 26 of the act (Laws 1898, pp. 14, 15) has no application to a seller of cotton seed; it applies alone to a buyer of cotton seed. The great bulk of the agricultural population of Mississippi are engaged in the production of cotton and cotton seed; and public policy forbids a privilege tax upon the seller of cotton seed. The contract sued upon in this case was one by which the plaintiff sold cotton seed, and not one by which it purchased cotton seed. The idea that the plaintiff could not recover in this case because it did not own the cotton seed at the time the contract was made, and could not buy them without violating the

privilege-tax law, seems to us to be wholly without force.
If the plaintiff had purchased the cotton seed after
the defendant breached its contract, on November 26, 1902,
whether it had paid the privilege tax or not, it would have
acquired title to such cotton seed as it bought which were deliv-
ered to it.    Title to property is not affected by the privilege-tax
law.   *People's Bank* v. *Railroad Co.,* 65 Miss., 365 (s.c., 4
South. Rep., 115).    Had the plaintiff purchased a sufficient
quantity of good, sound cotton seed to have completed the per-
formance of its contract, and shipped the same to the defendant,
the defendant could not have resisted payment on the ground
that the plaintiff had not paid the privilege tax.    The defendant
would not have been heard to say: "True, I bought and received
your cotton seed, and I agreed to pay you $16.75 per ton for
them; but you did not pay a privilege tax, and, therefore, when
you bought the seed from others you violated the law, and your
contracts of purchase were void; therefore, I will not pay you.
True, the contract between us is valid; no privilege tax is laid
on selling cotton seed; but I will go back beyond the contract
between us and set up the invalidity of contracts between you
and other people."   A failure to pay the privilege tax in question
could only affect the contract by which plaintiff purchased the
cotton seed from others in order to furnish them to defendant.
It had no application whatever to the contract sued upon by
which plaintiff agreed not to buy, but to sell, cotton seed to the
defendant.    It did not lie in the defendant's mouth, after having
peremptorily refused to receive cotton seed under the contract, to
say that the plaintiff could not have complied with the contract
because of the privilege-tax law.    The plaintiff could have paid,
and would have paid, the ten-dollar privilege tax, and gone
into the market to purchase the cotton seed with which to fulfill
its contract.    Of course, the plaintiff did not pay the privilege
tax before it became necessary to purchase seed from others in
order to fulfill its contract.

The defendant's plea resolves itself into this: It says to plaintiff: "You could not comply with your contract, because you did not have enough seed on hand; you could not have purchased other seed, because you did not pay the privilege tax." Such a plea is wholly bad, even if the ten-dollar privilege-tax statute has any application to the case. Assuming such application, the plea would be bad, because it did not aver that the plaintiff could not have paid the privilege tax. There is a difference between "you did not pay the privilege tax" and "you could not have paid the privilege tax." Plaintiff could have purchased the cotton seed in other states.

The truth of the business is that the privilege tax in this case was wholly an afterthought, as well as being foreign to the real issue. The key to the situation is found in the fact that the Buckeye Cotton Oil Company, the appellee, agreed to pay $16.75 per ton for cotton seed. This was on the 16th of October. The defendant received four hundred and fifty-six tons under the contract between that date and November 26th, at which last-mentioned date cotton seed were worth only $11 per ton, and the market was still declining. The Buckeye Cotton Oil Company was unwilling to pay $5.75 per ton more for cotton seed than the price at which they were selling in the market. It therefore breached the contract, taking the chance of escaping liability on some pretext, such as has been made successfully, up to this time, in this case. The court below permitted the amended third plea to stand as if it were a defense to the declaration, and thus an immaterial issue became the prominent, and really the only, issue in the case. By this plea and the ruling of the court below on the evidence, limiting the testimony to the question of the plaintiff's ability to have completed its contract from the seed which it had on hand at the date the contract was entered into, the court below gave unnecessary prominence to the question of the character and condition of the seed which the plaintiff had in its possession on the 16th of October. There

was a conflict of evidence upon this subject, and it may be conceded that the jury were warranted in concluding that the preponderance of the testimony was in favor of the idea that the seed which plaintiff owned on October 16, 1902, were not, on the 26th of November following, good, sound cotton seed. But the great trouble was done, the vitals of the plaintiff's case were destroyed, by the court permitting the defendant to escape what ought to have been the real issue in the case—plaintiff's ability from any and every source to have purchased and furnished defendant with the five hundred and forty-four tons of good, sound cotton seed necessary to have completed the one thousand tons stipulated in the contract.

*Alexander & Alexander,* and *George B. Power,* for appellee.

Fulfillment of the contract for the one thousand tons' delivery of good, sound cotton seed must have been made by plaintiff either from (1) seed on hand or from (2) seed purchased. The time of shipment was, according to the declaration and evidence, to run from October to April. Now, considering the first-mentioned way of fulfillment—from seed on hand when the contract was made—it is evident that it was impossible for plaintiff to complete the same. The court will note that it is affirmed by defendant that, of the original amount on hand on October 16th, all good and sound cotton seed had been delivered and paid for at the time of the alleged breach—that is, the time of the Buckeye Cotton Oil Company's letter refusing to receive more seed. Moreover, $5,000 had been paid over to plaintiff by defendant. This amount covered more than the small amount of loading charges, whereby counsel for appellant hope to "carry costs" in this case. There is no proof that this $5,000 was intended for seed merely. Orr stated that it was advanced generally. So, as the jury have passed upon the question, and it is apparent, from the total evidence—unanimous voice of all the witnesses—what the quality of the "original one thousand tons" was on November 26th, the date of refusal to receive

further shipments, we turn to consideration of the second-mentioned way in which alone plaintiff could have delivered the amount of seed under the contract—purchase and sale. Here the third amended plea bars the way of the plaintiff. It was an oil-mill corporation. It may have paid the tax required of oil mills by Laws 1898, sec. 25; but it had not paid the tax required of cotton-seed buyers. Hence, it had no legal right in court on this ground.

Counsel for appellant contend earnestly that the court should keep in mind that the contract sued on did not invest defendant with title to any particular cotton seed, but left plaintiff free to perform its obligations thereunder by shipping any good, sound cotton seed, no matter when or where purchased by plaintiff. How they can insist on this we do not know. Their own evidence in the case admitted the default as to privilege tax. There is no testimony or evidence to show that the plaintiff could have secured seed elsewhere or in any other way than as mentioned in the two grounds above—from the seed house (amount on hand) or from purchase. Nor did the instructions—or, rather, the clause inserted in amendment or modification thereof, "out of seed not purchased in the business of a buyer and seller of seed for profit"—preclude the jury from considering all testimony (if there had been any) tending to show that plaintiff intended to fulfill its contract "by shipping any good, sound cotton seed, no matter when or where purchased by plaintiff," except that the instructions precluded the jury from considering attempted fulfillment from plaintiff's buying and selling (as a cotton-seed buyer). Had plaintiff had seed elsewhere than in the mill; had it had seed, say, in another town; had it had seed in Jackson, and proved or attempted to prove that it had, then, unless it was attempted to prove that the seed on hand had been acquired, after October 16th, by plaintiff in its separate business of cotton buyer, counsel would be better able to make their contention.

Counsel put up the defense that the privilege tax does not

apply to plaintiff, because "it has no application whatever to
the contract sued upon by which plaintiff agreed not to buy, but
to sell, cotton seed." We feel that counsel are much too astute
to press this argument before this court, however much it may
have been attempted as a defense in the lower court by implica-
tion. The phrase used in the statute is "cotton-seed buyer."
This, of course, includes the idea of again selling. We will not
argue this point. Plaintiff did buy, and bought to sell again;
and plaintiff bought often, and from the farmers' wagons, as do
other seed buyers. In *Johnson* v. *Jennings,* 72 Miss., 349 (s.c.,
16 South. Rep., 791), where a merchant sued for damages
for failure to deliver cotton seed and for money advanced, the
defense relied on was this identical cotton-seed tax. When the
lower court erroneously gave judgment in favor of the delinquent
merchant, Judge WOODS, in reversing the case, said that "the
appellee [merchant] bought seed wherever he could, and sold to
fill contracts with others and to any buyer from him who would
pay the best price. He bought from the public generally, and
he thus purchased to sell again in the best market. He was, in
so buying and selling, a public cotton-seed buyer, and not a
merchant bartering goods and seed."

WHITFIELD, C. J., delivered the opinion of the court.

The trouble with appellant's case is its utter collapse on the
facts. The action is one to recover damages for the breach of
a contract providing for the sale of one thousand tons of good,
sound cotton seed only, at $16.75 per ton, to be delivered between
October, 1902, and April, 1903. Four hundred and fifty-six
tons were shipped and paid for up to November 26, 1902, and
$3,168.60 is the amount of damages alleged to have been sus-
tained by the Gloster Oil Works by reason of the change in the
market price and breach of the contract referred to. The
defendant (appellee), on November 26, 1902, declined to take
or receive any more seed, upon the ground that the seed were not

good, .sound cotton seed (the seed shipped at that time), and that they were known to be not of the quality called for by the contract, and yet shipped by the appellant so knowing. The defenses requiring notice are, first, that the plaintiff did not comply with its contract in shipping the quality of seed stipulated for, and that it could not have done so; and, second, that the only way in which the plaintiff attempted to fulfill the contract, or could possibly have fulfilled it, if at all, was by buying the cotton seed in the open market and selling them to the defendant, and that, in fact and in truth, the plaintiff was engaged in buying and selling cotton seed, and yet had never paid the privilege tax of ten dollars required for such business, and that the contract in this case was made with reference to such business so carried on in disregard of the statute imposing the tax, and that the seed which had been shipped (four hundred and fifty-six tons) embraced all of the good, sound cotton seed owned by the plaintiff when the contract was made.

A demurrer to this last defense set up by the third plea was properly overruled. If the facts sustain the plea, it was a good defense. It is perfectly clear, from this record, that the plaintiff was a cotton-seed buyer within the meaning of our statute; that it had never paid the privilege tax required by law; that it was constantly buying cotton seed and selling them; that the cotton seed on hand when the contract was made could not possibly have furnished the amount of good, sound cotton seed with which to comply with the contract; that the cotton seed which plaintiff desired to ship—a part of which he did ship—were damp and sappy, and had gotten so hot that they smoked and burned, through his shoes, the feet of one standing on them, and created such noxious odors as to produce sickness in the neighborhood; that the plaintiff must have known the condition of these seed, and, as a consequence, must have shipped the last lot it did ship defendant with a full knowledge of the unsound condition of the seed. Indeed, the proof overwhelmingly shows, not only that·

the seed which plaintiff desired to ship, and the only seed it had
on hand to ship, were utterly unsound and unfit to make oil, but
that all the cotton seed about that section of the country during
that season were unsound, sappy seed.    There is not one particle
of proof in the record that the plaintiff did ship, or could have
shipped, cotton seed of the quality contracted for.    Indeed, both
the manager (Mr. Merrin) and the president (Mr. Barney)
expressly testified that the only way they could have gotten any
seed, sound or unsound, with which to fulfill this contract, was
to have gone into the market and bought them.    Mr. Barney very
candidly testified as follows: That he expected to fill the contract
in any way he could get the seed; that he did not think that he
was confined to any particular market, but that he would have
been compelled to buy seed in the market to fill the contract.
Perhaps a stronger case of the utter worthlessness of the seed
shipped and knowledge on the part of the shipper of such con-
dition can hardly be imagined than the evidence this case dis-
closes.    It is perfectly idle, in view of the testimony, to talk
about the ability of the plaintiff to fulfill the contract.

It is equally unavailing to say that the Gloster Oil Works was
an oil mill, and had the right to buy seed for its use as an oil mill.
That is perfectly true; but it is equally true that if, besides con-
ducting its business as an oil mill proper, it did the other distinct
business of buying and selling cotton seed, it was liable for the
privilege tax on this last business, as held in the Louisiana Union
Cotton Oil Company case, 52 La. Ann., 357 (26 South. Rep.,
766), decided in 1900.    And the distinction attempted to be set
up—that the Gloster Oil Works was not buying cotton seed, but
selling cotton seed, and hence it was not liable for the privilege
tax—is disposed of by the case of *Johnson* v. *Jennings*, 72 Miss.,
349 (16 South. Rep., 791).    The court in that case said: "The
appellee bought seed wherever he could, and sold to fill contracts
with others and to any buyer from him who would pay the best
price.    He bought from the public generally, and he thus pur-

chased to sell again in the best market. He was, in so buying and selling, a public cotton-seed buyer." We adhere to that definition of a cotton-seed buyer subject to a privilege tax.

So far as the law of the case is concerned, the modifications of plaintiff's instructions were all correct, and he got, under instruction No. 3, all that the court could possibly have given. That instruction was in these words:

"If the jury believe, from the evidence, that the plaintiff was able, willing, and ready to ship to defendant the balance of the one thousand tons of good, sound cotton seed, out of seed not purchased in the business of a buyer and seller of seed for profit, and stipulated for in the written contract of October 16, 1902, which were not shipped, from the seed which they had on hand when the contract was made, or from those purchased afterwards and before November 26, 1902, when defendant refused to receive more seed, or from such good, sound cotton seed as plaintiff might have purchased thereafter with which to fulfill the contract, and that plaintiff would have shipped said balance but for defendant's refusal to receive more seed, then the jury will find for plaintiff, awarding it, in addition to the $40.60 mentioned in another instruction, such damage as they may believe, from the evidence, plaintiff has sustained."

It is useless to protract the opinion. The effect of the testimony is to leave the plaintiff without a vestige of a case.

*Affirmed.*