On the Merits.
PROVOSTY, J.
The state alleges that the defendant company paid less than it owed for its licenses of 1911, 1912, 1913, and 1914, and sues for the deficiency. The defendant company says that the law under which said license is demanded (section 11 of Act No. 171, p. 387, of 1898) is unconstitutional, for the reasons that it is discriminatory in that it does not impose the -license upon all the persons belonging to the classes upon which the license is imposed, and that the license it imposes is not graded, as is required by article 229 of the Constitution.
The said section 11 begins:
“Be it enacted, etc., that for carrying on each business of gaslight, electric light, waterworks, shoot the chutes, miniature railroads, sawmills employing ten or more hands, telegraphing, * * * telephoning, express company, cotton compress or ginnery, cotton picking, slaughterhouse, distillery and rectifying alcoholic or malt liquors, brewing, ale, beer, porter or other malt liquors, manufacturing tobacco, cigars or cigarettes, refining sugar and molasses, or either of them, manufacturing cotton seed oil, oil cake or cotton seed meal, the license shall be based on the gross annual receipts of each person, association of persons, business firm or corporation engaged in said business, as follows
Then follow 20 paragraphs purporting to establish as many classes based upon gross annual receipts, and fixing the amount of license to be paid by each class. All these paragraphs are expressed alike, amounts alone being changed, except the thirteenth, eighteenth, and nineteenth. Their formula is:
“Class When the gross annual receipts are $ or more, and less than $ , the li- . cense shall be $
*75 Thus:
“Twelfth Class. When the said gross annual receipts are $150,000 or more, and less than $200,000, the license shall be $375.00.
“Thirteenth Class. When the said gross annual receipts are $100,000, the license shall be $250.00.
“Fourteenth Class. When the said gross annual receipts are $75,000 or more, and less then $100,000, the license shall be $187.50.”
Here it will be noted that no provision is made for cases where the receipts are more than $100,000 and less than $150,000.
And again:
“Eighteenth Class. When the said gross annual .receipts are over $20,000 and less than $25,000, the license shall be $50.00.
“Nineteenth Class. When the gross annual receipts are over $15,000 and less than $20,000, the license shall be $37.50.”
Here it will be noted that no provision is made for those cases where the receipts are exactly $20,000.
Paragraph 13 should have been made to provide for the cases where the receipts are $100,000 or more, and less than $150,000; paragraph 18, where they are $20,000 or more, and less than $25,000; and paragraph 19, where they are $15,000 or more, and less than $20,000. Their failure so to provide was due manifestly to accident; and the Legislature at its last session amended them so as to make them so provide.
The learned counsel for the state does not contend that a license law, which discriminates between persons of the same class, is valid, nor that a law which imposes an ungraded license is valid, but he contends that it is manifest that it was through mere accident that paragraphs 13, 18, and 19 were formulated as we find them, and that we must not accept them as they are, but according to what was the manifest intention of the Legislature that they should be; that the well-recognized principles governing the interpretation of statutes will allow of this being done; and that a statute must not be held to be unconstitutional, unless such conclusion is absolutely unavoidable.
[2] Interpretation can go a long ways towards upholding a statute, but it must, unfortunately for the state’s case, accept the legislative enactment as it is written, and not as it should have been written (in other words, it cannot rewrite it) ; and that is what would have to be done in order to make the said paragraphs conform in meaning to what they should have expressed, and have by amendment been made to express; what the learned counsel would have them interpreted as expressing.
The said section 11 imposes no license tax upon those persons, firms, or corporations whose receipts are exactly $20,000, or between $100,000 and $150,000, while it imposes a license tax upon the persons, firms, or corporations in the same line of business whose receipts fall either below or above these figures; hence, it is discriminatory and, as a consequence, null.
[3] Also it does not grade the license it imposes, for by the grading of a thing is meant to dispose of all of its parts in a gradation; and this license is not thus disposed in all of its parts, since it does not bear at all upon the persons, firms, or corporations whose receipts correspond with the figures just named. Of course, when we speak of grading a license, we really mean grading the persons, firms, or corporations upon whom it is imposed. We mean to classify these persons, firms, or corporations, precisely as the said section 11 as originally enacted attempted to do, and, as amended, has done. If a part of the thing to be graded is left out, if some of the persons, firms, or corporations to be classified are left out, there is not a complete gradation or classification, but only a partial one (in other words, there is not a gradation or classification, but only the commencement, or attempt at one); and, needless to say, this last is not what article 229 of the Constitution contemplates when it requires a gradation or classification; but *77 what it contemplates and requires is a gradation or classification that is complete, that embraces all the persons, firms, or corporations subjected to the license, or, which is the same thing, who must be subjected to it if discrimination and consequent unconstitutionality is to be avoided.
[4] Because of its being discriminatory and lacking gradation, the said section 11 is null as a whole. And this disposes of the other contention of the learned counsel of the state that, inasmuch as' the defendant company, in view of the amount of its receipts, does not come under any one of the said defective, paragraphs, but under another and faultless paragraph, it is not affected in its interests by the defects in said paragraphs, and therefore has no standing for seeking to take advantage of them. The answer is that these defects render the section 11 null as a whole; and that the defendant company has an interest in attacking that section, since the present suit is founded upon it. If the defective paragraphs alone were invalid, and did not render the entire section invalid, the principle invoked by the state’s learned counsel would have application.
An illustration of the application of that principle is offered by the case of Union Oil Co. v. Marrero, 52 La. Ann. 357, 26 South. 766, which arose out of this very section 11. The court there said of this section that in so far “as [it] undertakes to require the payment of a license for the business of manufacturing cotton seed oil cake, and cotton seed meal, [it] is repugnant to the provisions of article 229 of the Constitution, and is therefore void.” The unconstitutionality here does not address itself to the section as a whole, but only to its application to a particular business. It leaves the section perfectly valid as to all other kinds of business. Here, manifestly, only those persons, firms, or corporations engaged in that particular kind of business, as to which the section is unconstitutional, could invoke the invalidity.
In like manner, in the case of City v. Insurance Co., 106 La. 32, 30 South. 254, cited by learned counsel, the statute was null in so far as it was designed to operate extra-territorially, but was none the less valid in so far as operating intraterritorially. And in Hatch v. Reardon, 204 U. S. 160, 27 Sup. Ct. 188, 51 L. Ed. 415, 9 Ann. Cas. 736, also cited, it was null in so far as it might affect interstate commerce, but not otherwise. And in these two cases only the persons affected by the extraterritorial operation of the statute or by its regulation of interstate commerce would have a standing for questioning its validity, and only in so far as thus operating.
The conclusion of the nullity of said statute we have reached most reluctantly, and only under the strongest compulsion, as was the case with the learned trial judge, who, with his usual elegance of diction, expressed our thoughts in that regard better than we ourselves could do. He said:
“Of course, the courts are averse to declaring the unconstitutionality of legislative enactments. Their aversion increases when the law attacked has been enforced for many years and relates to the fisc. I am conscious that my decision will affect not only distilleries, but the many other kinds of business taxed by section 11. But constitutional rights must be respected, and, if defendant’s contention regarding the failure to properly graduate the tax is well founded, my duty to uphold it, regardless of consequences, is plain.”
Judgment affirmed.