THE TEXAS COMPANY V. J. W. STEPHENS ET AL.

Decided June 26, 1907.

**1.—Practice in the Supreme Court—Cross Assignments of Error.**

Where an appellee files cross assignments of error in the Court of Civil Appeals, and upon affirmance of the judgment by that court the appellant alone applies for and obtains a writ of error from the Supreme Court, appellee's cross assignments of error can not be considered by the Supreme Court, as that court can only consider matters specified and embraced in some form in a petition for writ of error. (P. 638.)

**2.—Judgment—Parties.**

In an action to enjoin the collection of State taxes in which the Attorney-General, Comptroller and other State officers are defendants, and in which action the defendants, among other things, pray that the State recover the taxes enjoined, it was error for the trial court to render judgment in favor of said defendants for said taxes since they had no right of action for the same; and it was error for the Court of Civil Appeals to reform said judgment and decree a recovery by the State since the State was not a party to the suit. (P. 638.)

**3.—Occupation Taxes—Statute Construed.**

The taxes imposed by sections 9, 11, 12 and 13 of chapter 148 of the Acts of the Twenty-ninth Legislature are occupation taxes and not ad valorem taxes. The fact that the amount of the tax is to be determined, in prescribed methods, from the value, extent or magnitude of the business done, does not affect the character of the tax. (P. 639.)

**4.—Same—Taxation.**

The same article of the Constitution (section 9, article 8), which limits the rate of ad valorem tax, confers the power on the Legislature to impose taxes on occupations, and this without limitation as to the amount or manner in which it shall be ascertained, hence the tax in question, being an occupation tax, can not be in violation of said article as being excessive, nor can said Act be unconstitutional on the ground that it is a mere evasion of said article. (Pp. 639, 640.)

**5.—Occupations—Classification.**

The Constitution confers the power upon the Legislature to classify the subjects of occupation taxes, and only requires that the taxes shall be equal and uniform upon the same class. The considerations upon which the classifications are based are primarily within the discretion of the Legislature—merchants, for instance, may be divided and subdivided into many different classes. And the courts can only interfere when it is made clearly to appear that an attempted classification has no reasonable basis in the nature of the businesses classified, and that the law operates unequally upon subjects between which there is no real difference to justify a separate treatment. (Pp. 640, 641.)

**6.—Same—Occupation Tax.**

It is within the power of the Legislature to impose different occupation taxes upon different wholesale businesses, and there is nothing in the Act of the Twenty-ninth Legislature (chapter 148) which, on its face, indicates that the occupation tax imposed upon the "wholesale business of oil" is an arbitrary, unreasonable or unreal classification. (P. 641.)

**7.—Double Taxation—Presumption Against.**

When the same person carries on several different businesses each may be taxed; and when the Legislature has defined and taxed one business it is not to be presumed that it intended to again tax the same business under another name, nor that it intended to tax, as a distinct business, that which is a mere incident of a business which has already been defined and taxed as a whole. (Pp. 641, 642.)

**8.—Definition of Wholesale.**

The accurate and popular meaning of the word wholesale is "a sale of goods by the piece or large quantity, as distinguished from retail." (Pp. 642, 643.)

**9.—Caption of Act—Construction.**

Although the caption of the Act of the Twenty-ninth Legislature (chapter 148) levies a tax upon the "business of wholesale dealers in coal oil," in view of the provisions of section 9 of said Act, which levies the tax upon those engaged in "the wholesale business of oil," etc., it is evident that the Legislature did not mean to limit the tax to the business only of buying to sell again, as that of a dealer is sometimes defined, but to the business when conducted by wholesale without regard to the manner by which the oil is acquired. But one who acquires, possesses, handles and sells oil may properly be said to deal in oil, whether he has bought it to sell again or not. (P. 643.)

**10.—Occupation Tax—Interstate Commerce.**

When an occupation is carried on wholly within the State the fact that some of the product is sold and delivered beyond the State does not make an occupation tax obnoxious to the commerce clause of the Constitution of the United States. (P. 644.)

**11.—Pipe Line—Occupation Tax.**

The business of transportation by pipe line for other persons for hire or profit is distinguishable from that of the ownership and use of pipe lines by the owners thereof for the transportation exclusively of their own products and as an incident of their business, and the first alone may be taxed without violation of the Constitution. (P. 645.)

**12.—Occupation Tax—Amount.**

Where, only as a method or basis of arriving at the amount of tax to be charged upon the occupation of transporting oil for hire, a pipe line company is required to include, in its reports of the amount of oil transported, the amount of its own oil, as well as of that transported for others, the law is not unconstitutional as imposing a tax upon such companies which is not imposed upon others for transporting their own oil. (Pp. 645, 646.)

**13.—Same—Discrimination.**

A statute which imposes an occupation tax only on pipe line companies transporting oil, and not on other pipe line companies, can not be said to make an unconstitutional discrimination, in the absence of evidence that all pipe line companies in this State are not so engaged. (P. 646.)

**14.—Same—Classification.**

It is within the power of the Legislature to divide and subdivide pipe line companies into different classes and to impose different occupation taxes, provided the classification is not arbitrary and capricious. (P. 646.)

**15.—Emergency Clause—Effect.**

An Act imposing a tax to be paid quarterly and fixing the date of the beginning of the first quarter, was delayed in its passage until after the date named, held, in view of the evident intention of the Legislature and the fact that the bill was passed with the emergency clause, the Act took effect from its passage, and those upon whom the tax was imposed were liable for the fraction of a quarter between the date of the passage of the bill and the end of the first quarter named. (Pp. 646, 647.)

Error to the Court of Civil Appeals for the Third District, in an appeal from Travis County.

*Jas. L. Autry* and *Gregory & Batts,* for plaintiff in error.—The Court erred in not holding the Act of the Twenty-ninth Legislature, published

as chapter 148 of the Acts of 1905, unconstitutional, inoperative and void as to appellant for the reasons set up in plaintiff's first amended original petition. The Act referred to above is unconstitutional and void as to appellant, as being in conflict with the Constitution of the United States and the Constitution of the State of Texas for the reason that it undertakes to impose upon plaintiff the following burdensome, compulsory, unjust and intolerable provisions and conditions set up in plaintiff's first amended original petition in paragraphs 11a and 11b: (1.) Direct payment by the taxpayer into the Treasury of the State is demanded without his being afforded any legal remedy whatever to reclaim or recover, should it be determined that such payment was unlawful, and no opportunity whatever is legally afforded the taxpayer by which he may test the validity of the law in advance of such irretrievable payment. (2.) Payment of arbitrary and oppressive percentages upon gross receipts from sales regardless of cost or of profit; upon market value of properties not the subject of sale, even if never sold or realized upon; upon average market value of the corpus of real estate when severed, whether ever sold or otherwise realized upon or not; upon gross earnings arising from operations of properties whether such are profitable or not; upon theoretical, uncertain, indeterminate and sometimes impossible amounts as gross earnings for service performed in one's own behalf in the legal transaction of one's own affairs, whether profitable or not, and whether or not it was possible to have such performed by another. (3.) The liability to prosecution for misdemeanor for failing to report and to pay as and when required by the Act, the offense as fixed being of Justice Court jurisdiction and the venue being in Travis County Courts exclusively, in which county there are eight such courts, all but two of which are outside of Austin, the capital city and county seat, and at least one of which is some twelve or fifteen miles distant therefrom and from the nearest railroad and routes of general travel at a place in the mountainous, almost inaccessible, and almost unpopulated part of Travis County—all regardless of the domicile or business place of the taxpayer. Moreover, under the law, the jurisdiction of the eight courts mentioned is concurrent and prosecutions are instituted in such by affidavit, and no legal impediment exists to the daily prosecution in all the eight courts simultaneously, the only available legal relief being the right to plead former conviction or acquittal to the prosecution in each of the other seven, after such was had in one, but the burden of the innumerable and multifarious suits would remain and the necessity for vigilant defense. (4.) Each day of default is declared a separate offense, and so is subject to separate prosecution and to separate fine in each case of not less than $50 nor more than $100, besides court costs. (5.) If the taxpayer is a corporation (but not otherwise), then it is subject, by express terms of the Act, to "additional" penalties of $25 for each day of default in report and payment, the same to be sued for by the Attorney-General and in Travis County, regardless of the domicile or business place of the taxpayer. (6.) The recurring duty of making reports and payments comes at each quarterly period, and so the endless multiplication of penal and financial liability. (7.) The further multiplication of such burdens if the taxpayer is affected, as is frequently

the case, by more than one section of the Act complained of—in the case of this plaintiff not less than three of such sections being applicable. (8.) This immense accretion of threatened and annihilating penalties comes regardless of amount of the tax demanded and·whether such be large or small. (9.) The ex parte inquisitorial proceeding before the district judge of Travis County (however remote the taxpayer's domicile or business place may be), as to books and papers, and under penalty of contempt proceedings and summary punishment. (10) That the taxes demanded are confessedly in addition to all other taxes, notwithstanding some of those affected (and particularly this plaintiff), for instance dealers, are already subject to the merchants' occupation tax, and sometimes to the ad valorem taxes, for instance, the land owning oil producer. Art. 14, Amendments to Constitution of the United States; Rev. Stats. of the United States, sec. 1977; Cotting v. Godard, 183 U. S., 79; Opinion of Mr. Justice Brewer on pp. 99-102; Santa Clara v. Southern Pac. Ry. Co., 18 Fed., 385; art. 8, Amendment to Constitution of the United States,; art. 4, sec. 4, Constitution of the United States; art. 5, sec. 6, Constitution of the United States; art. 4, Amendment to the Constitution of the United States; Constitution of Texas, art. 1, secs. 13, 3, 19; art. 3, secs. 1, 8, 9; Rev. Stats. of Texas, arts. 5049 (Amended 1897, p. 49), 5243; Acts of 1905, pp. 351, 336; Penal Code of Texas, arts. 112, 114.

The court erred in holding appellant liable for any of the taxes levied by section 9 of the Act aforesaid and in not holding said section wholly void and inoperative upon the ground that it seeks to levy a tax upon a class of persons therein sought to be defined, and that the terms of the classification as set forth are arbitrary, unreasonable and capricious, and that the taxes are not equal, in that dealers in oil are required to pay a greater tax than other wholesale dealers are subject to, and that said Act, and especially said section, is violative of the Constitution of the State of Texas, and the Constitution and laws of the United States, providing for and assuring equal protection of the laws, and that no person's property shall be taken without due process of law. Applicant says that said section 9 of said Act is in conflict with the Constitution of the State of Texas, and the Constitution and laws of the United States, providing for and assuring equal protection of the laws, and that property shall not be taken without due process of law, in that said section 9 levies a tax upon a class of persons, in said section sought to be defined; that the classification is arbitrary, unreasonable and capricious; and that the class thus defined by the section is subject to a greater tax than is required of other wholesale dealers. Egan v. State, 68 S. W. Rep., 273; Taylor v. Vincent, 12 Lea, 282; Norris v. Commonwealth, 27 Pa. St., 495; State v. Yearby, 82 N. C., 561, 33 Am. Rep., 694; State v. Spaugh, 129 N. C., 564; State v. Chadbourn, 80 N. C., 479, 30 Am. Rep., 94; Webster's Int. Dict., definition of· "Wholesale;" Commonwealth v. Campbell, 33 Pa. St., 380; Overall v. Bezeau, 37 Mich., 506; Sanders v. Russell, 78 Tenn., 293; State v. Barnes, 35 S. E. Rep., 605, 606; State v. Barnes, 126 N. C., 1063; Vernon v. Manhattan Co., New York, 17 Wend., 524; 8 Am. & Eng. Ency. of Law, 846. Authorities to the effect that the Act should not be extended beyond its clear intent: United States v. Wigglesworth, 2

Story, 273; State v. Pullman (Wis.), 23 N. W. Rep., 872; State v. M'Fetridge, Wis., 24 N. W. Rep., 144; Mace v. Buchanan (Tenn.), 52 S. W. Rep., 507; State v. Green (N. C.), 35 S. E. Rep., 463; Brown v. Commonwealth (Va.), 36 S. E. Rep., 487; Cooley on Taxation, p. 267.

The court erred in holding valid the terms of the Act aforesaid, notwithstanding such Act affirmatively places a tax upon sales made to persons outside of Texas and places a tax upon interstate commerce, and in holding such Act constitutional notwithstanding it is in conflict with the provisions of the Constitution of the United States giving to Congress of the United States exclusive power over the commerce between the States, and notwithstanding no State has by reason of the Constitution and laws of the United States a power to tax interstate commerce. The Act aforesaid is unconstitutional for the reason that it places a tax upon sales made to persons outside of Texas for delivery to such person and thereby places a tax upon interstate commerce, no State having by reason of the Constitution and laws of the United States a power to tax interstate commerce, and the Act being unconstitutional as in conflict with the provision of the Constitution of the United States giving to Congress the exclusive control of commerce between the States and as being in conflict with the laws passed in pursuance of such constitutional provision. Art. 2, sec. 10, clause 2, Constitution of the United States; art. 2, sec. 8, clause 4, Constitution of the United States; Western Union Tel. Co. v. State, 150 U. S.; Western Union Tel. Co. v. State, 62 Texas, 630; Shaw Piano Co. v. Ford, 41 S. W. Rep., 198; Miller v. Goodman, 91 Texas, 44; Robbins v. Shelby Taxing Dist., 120 U. S., 490; Fargo v. Michigan, 120 U. S., 246; Philadelphia S. S. Co. v. Penn., 122 U. S., 336; Western Union Tel. Co. v. Pendleton, 122 U. S., 357; LeLoup v. Mobile, 127 U. S., 640; Crutcher v. Kentucky, 121 U. S., 58; Osborne v. State, 33 Fla., 172, 25 L. R. A., 124; State v. Woodruff 114 Ind., 158.

The court erred in holding that section 12 of the Act aforesaid concerning pipe lines is valid, and in holding appellant liable for taxes thereunder, and in holding that the Act does not violate the Constitution of Texas in that the tax levied is not equal and uniform, and in holding that, while said Act creates a class which it defines to be "pipe line companies," which includes such as convey oil, gas, natural and artificial, steam for heat and power, and operators of pneumatic tubes, it makes arbitrary and capricious distinction between the classes by laying upon such as convey oil, and not upon the others, a further and added burden of paying the tax not only upon the receipts and operations for doing service for others, but also upon such sum as it would have been compelled to pay for performing service for itself, if it had employed some other pipe line to perform this service. Constitution of the United States, Fourteenth Amendment; Barbier v. Connerly, 113 U. S., 27; Mutual, etc., v. City of Augusta, 35 S. E. Rep., 71; Pullman Palace Car Co. v. State, 64 Texas, 274; Opinion of Chief Justice Fuller in Pollock v. Farmers' L. & T. Co., 157 U. S., 429.

The court erred in holding that appellant was liable for the tax imposed under section 13 of the Act aforesaid, said ruling being erroneous for the reason that appellant is engaged in producing oil upon

a single tract of land. owned by it in fee simple, and that as such land owner it has the inherent right to separate a part thereof, as the oil, and make sale of same without the tax burden laid upon such operation, and the attempt to place a tax upon the sale of the single element, oil, when so separated and sold, all other ownerships being entitled, without paying of tax, to separate parts therefrom, as timber, coal, sand, gravel, clay, gold and copper, is an unjust and improper exaction, and that such exaction violates the provisions of the Constitution of Texas requiring equality and uniformity of taxation, and provisions and laws of the United States guaranteeing the equal protection of the laws, and that no person's property shall be taken without due process of law. Lone Acre Oil Co. v. Swayne, 98 Texas, 597; State v. A. & N. W. Ry. Co., 94 Texas, 530; Cooley on Taxation, 28; Scully v. People, 104 Ill., 349; State v. Lakeside Land Co., 71 Minn., 283; State v. Stephens, 146 Mo., 662; Mills v. Frazzier, 63 Pa., 642; Minces v. Scherring, 72 Minn., 528; Chicago v. Collins, 175 Ill., 445; Oliver v. Wash Mills, 11 Allen, 267; State v. Switzler, 143 Mo., 287; Ellis v. Vrazier, 53 L. R. A., 455; State v. Tracey (Mo.), 6 S. W. Rep., 712; Brookfield v. Tovey, 141 Mo., 619; State v. Railway Co., 40 Mo., 22; Smith v. Commissioners, 117 Ala., 186; Livingstone v. Paducah, 80 Ky., 656.

*Robert Vance Davidson,* Attorney-General, and *Claude Pollard,* Assistant Attorney-General, for defendant in error.—The portions of the Act relative to taxes do not deny the equal protection of the laws.   Masterson v. State, 42 S. W. Rep., 1005; Insurance Co. v. Chowning, 86 Texas, 657, and cases cited; Insurance Co. v. Orlopp, 61 S. W. Rep., 340; Brooks v. State, 58 S. W. Rep., 1032; Languille v. State, 4 Texas App., 313; Thompson v. State, 17 Texas App., 256; Fahey v. State, 27 Texas Cr. App., 126; Ex parte Rippey, 68 S. W. Rep., 687; Pacific Ex. Co. v. Seibert, 142 U. S., 353; Cook v. Marshall County, 196 U. S., 263; Savannah, Thunderbolt, etc., R. R. Co. v. Savannah, 198 U. S., 392; Kehrer v. Stewart, 197 U. S., 69; Armour Packing Co. v. Lacy, 200 U. S., 226; Reagan v. Farmers' Loan & Trust Co., 154 U. S., 362; Smyth v. Ames, 169 U. S., 466; Bell's Gap R. R. Co. v. Pennsylvania, 134 U. S., 237; Atchison, Topeka & S. F. Ry. Co. v. Matthews, 174 U. S., 106; Fidelity Ins. Co. v. Mettler, 185 U. S., 308; Merchants' Life Association v. Yoakum, 98 Fed., 251; Brannon's Fourteenth Amendment, 320-323; Pomeroy's Constitutional Law Bennett's Ed.), 194, 201; Cooley on Taxation, 72 et seq.; Cooley on Constitutional Limitation, 506; Mackey v. San Francisco, 113 Cal., 392; McGhee v. State, 92 Ga., 21; Sears v. Cottrell, 5 Mich., 250; Knoxville & O. R. Co. v. Harris, 143 S. W., Rep., 115; Weaver v. State, 89 Ga., 639; St. Louis v. Sternberg, 69 Mo., 303; State v. Consol. Va. Min. Co., 16 Nev., 432; People v. State Board, 174 N. Y., 416; Lacy v. Packing Co., 134 N. C., 567; Packing Co. v. Lacy, supra; State v. Hammond, 110 La. Ann., 186; Ex parte Lynch, 16 S. C., 32; Scott v. Watkins, 22 Ark., 556.

The taxes imposed under section 9 are equal and uniform upon the same class of subjects within the limit of the authority levying the tax.   Const. of Texas, art. 8, sec. 2; Thompson v. State, 17 Texas App., 256; Clark v. Finley, 93 Texas, 179; Albrecht v. State, 8 Texas App.,

216; Languille v. State, 4 Texas App., 312; Texas Banking & Ins. Co. v. State, 42 Texas, 636; Blessing v. Galveston, 42 Texas, 641; Supreme Lodge v. Johnson, 81 S. W., 18; Mullinix v. State (Texas Crim., 1901), 60 S. W. Rep., 768; Brooks v. State, 58 S. W. Rep., 1032; Pullman Palace Car Co. v. State of Texas, 64 Texas, 274; Fahey v. State, 27 Texas App., 146; Ex parte Williams, 31 Texas Crim., 262; State Railroad Tax Cases, 92 U. S., 576; Savannah, etc., Ry. v. Savannah, 198 U. S., 392; People v. Commissioners, 199 U. S., 48, reported in 105 Am. St. Rep., 693; Armour Packing Co. v. Lacy, 200 U. S., 226, 26 Sup. Ct. Rep., 232; Tiedeman, Limitations, sec. 101, p. 282; Cooley, Const. Limitations, 12, 87, 138; Cooley on Taxation, 3d ed., pp. 261, 262, 1095; Burroughs on Taxation, secs. 53, 54; McGhee v. State, 92 Ga., 24; Scottish Union Ins. Co. v. Herriott, 109 Iowa, 606; Hodgson v. City of New Orleans, 21 La. Ann., 301; People v. Coleman, 4 Cal., 46, 55; State v. Hammond, 110 La., 186; Lacy v. Packing Co., 134 N. C., 567.

The Legislature may require those engaged in the wholesale business of oil to pay an occupation tax, without requiring those engaged in the wholesale business of other products to pay same. Constitution of Texas, art. 8, secs. 1, 2 and 17; 21 Am. & Eng. Enc. of Law (2d ed.), 779, and cases cited in note 6.

The Act complained of does not place upon those engaged in the wholesale business of oil an unjust and arbitrary burden of taxation, denying equal protection of the laws. Languille. v. State, 4 Texas App., 323; Ex parte Williams, 31 Texas App., 262; Clegg v. State, 42 Texas, 608; Texas Banking & Ins. Co. v. State, 42 Texas, 640; Thompson v. State, 17 Texas App., 257; McCullough v. Maryland, 4 Wheat., 316; State Tax on Foreign-held Bonds, 15 Wall., 300; Delaware Railroad Tax, 18 Wall., 206; Packing Co. v. Lacy, 200 U. S., 226, 26 Sup. Ct. Rep., 232; Memphis Gas Light Co. v. Shelby Co., 109 U. S., 398; Steamship Co. v. Pennsylvania, 122 U. S., 336; Cooley on Const. Lim., 508; Gibson Co. v. Pullman Car Co., 42 Fed. Rep., 573; State v. Hayne, 4 S. C., 403; People v. Haws, 34 Barb., 69; People v. Mayor of Brooklyn, 4 N. Y., 419; Knoxville R. Co. v. Harris, 99 Tenn., 684; Insurance Co. v. Commonwealth, 133 Mass., 161; Simmons v. State, 12 Mo., 268.

The tax imposed under section 9 of the "Kennedy Bill" is upon those engaged "in the wholesale business" of oil, that is, selling, receiving, possessing, or handling oil in large quantities, "from whatever source the same may have been received." The tax is not upon wholesale dealers, that is, those who buy to sell again to the retailer, in the same form in which it is bought, but upon those engaged in selling, receiving, possessing or handling oil in larger quantities, regardless of whether it is bought and sold, possessed, or handled; or whether it is refined and sold, possessed or handled.

Section 9 of the "Kennedy Bill" imposes an occupation tax upon the following classes: (1) Those who engage in their own name in the wholesale business of oil; (2) Those who engage in the name of others in the wholesale business of oil; (3) Those who engage in the name of their representatives or agents in the wholesale business of oil. The tax is: (1) Two percent on gross receipts from sales, and; (2) Two percent on cash market value of any and all oils that may be received, possessed or handled, or disposed of in any other manner than by sale. Higgins

v. Rinker, 47 Texas, 393; Montclair v. Ramsdell, 107 U. S., 152; Black on Int. of Law, par. 87, p. 212; Lewis Sutherland's Stat. Con., vol. 2, par. 347; Potter's Dwarris on Stats., p. 137.

The caption of the Act is sufficiently broad to embrace a percentage upon the cash market value of oil received, possessed or handled, as an item entering into and composing part of the occupation tax imposed. Fahey v. State, 27 Texas App., 158; Albrecht v. State, 8 Texas App., 216; Tadlock v. Eccles, 20 Texas, 793; Day Land & Cattle Co. v. State, 68 Texas, 542; Johnson v. Martin's Estate, 75 Texas, 40; Campbell v. Cook, 86 Texas, 630; Ex parte Mabry, 5 Texas App., 93; Cox v. State, 8 Texas App., 254; Montclair v. Ramsdell, 107 U. S., 153; Lewis' Sutherland on Stat. Con., vol. 1, p. 190 et seq.; Rosenbloom v. State, 64 Neb., 34; Neb. Loan & Building Association v. Perkins, 61 Neb., 254; Offholder v. State, 51 Neb., 92; Bamhill v. Teague, 96 Ala., 207; State v. Madison, 45 N. W., 856; People v. Lawrence, 36 Barb. (N. Y.), 192; Kurtz v. People, 33 Mich., 279; Crookston v. Co. Com., 79 Am. St. Rep., 453.

The tax imposed under section 9 of the "Kennedy Bill" is not an ad valorem tax, but an occupation tax. Constitution of Texas, art. 8, secs. 1, 2 and 17; Albrecht v. State, 8 Texas App., 217; Languille v. State, 4 Texas App., 322, and cases cited; State v. Stephens, 4 Texas, 137; Aulanier v. Governor, 1 Texas, 664; State v. Bock, 9 Texas, 369; Thompson v. State, 17 Texas App., 258; Texas Banking and Ins. Co. v. State, 42 Texas, 637; Galveston County v. Gorham, 49 Texas, 289; Blessing v. Galveston, 42 Texas, 660; Fahey v. State, 27 Texas App., 161; Higgins v. Rinker, 47 Texas, 396; Pullman Co. v. State, 64 Texas, 274; Maine v. Grand Trunk Railway, 142 U. S., 217; State Railroad Tax Cases, 92 U. S., 603; State Tax on Railway Gross Receipts, 15 Wall., 284; Nathan v. Louisiana, 8 How., 73; Cooley on Taxation, 3d ed., 1094, et seq.; Cumberland R. R. Co. v. State, 52 L. R. A., 756; Capital City Water Co. v. Board of Revenue, 107 Ala., 303; Kittanning Coal Co. v. Commonwealth, 79 Pa. St., 100; Albertson v. Wallace, 81 N. C., 479; Merriam v. City of New Orleans, 14 La. Ann., 318; Atlanta Building Assn. v. Stewart, 109 Ga., 80; Kentz v. Mobile, 120 Ala., 623.

Neither the Act as a whole nor any of its sections or provisions attempts to lay a burden on interstate commerce. Gulf, C. & S. F. Ry. Co. v. Dwyer, 75 Texas, 578; St. Louis S. W. Ry. Co. v. Smith, 49 S. W. Rep., 631; Western Paper Bag Co. v. Johnson, 38 S. W. Rep., 365; Ficklen v. Shelby Co., 145 U. S., 21; Ouichita Packet Co. v. Aiken, 121 U. S., 444; State Tax on Railway Gross Receipts, 15 Wall., 293; Sherlock v. Alling, 93 U. S., 99; Smith v. Alabama, 124 U. S., 465; Western Union Tel. Co. v. James, 162 U. S., 656; Cook v. Marshall County, 196 U. S., 261; Ashley v. Ryan, 153 U. S., 436; Hopkins v. United States, 171 U. S., 594, and cases cited; Packet Company v. Bay, 26 Sup. Ct. Rep., 209; Delaware Railroad Tax, 18 Wall., 232; Munn v. Illinois, 94 U. S., 135; Cook v. Marshall County, 119 Iowa, 384; Connell v. Telegraph Co., 108 Mo., 459; Bridge Co. v. State Board, 25 L. R. A., 136, and cases cited.

The tax imposed under section 13 of the "Kennedy Bill" is not an ad valorem tax, but an occupation tax. Constitution of Texas, art. 8, secs.

1, 2 and 17; Albrecht v. State, 8 Texas App., 217; Languille v. State, 4 Texas App., 322, and cases cited; State v. Stephens, 4 Texas, 137; Aulanier v. Governor, 1 Texas, 664; State v. Bock, 9 Texas, 369; Thompson v. State, 17 Texas App., 258; Texas Banking and Ins. Co. v. State, 42 Texas, 637; Galveston County v. Gorham, 49 Texas, 289; Blessing v. Galveston, 42 Texas, 660; Fahey v. State, 27 Texas App., 161; Higgins v. Rinker, 47 Texas, 396; Pullman Co. v. State, 64 Texas, 274; Maine v. Grand Trunk Railway, 142 U. S., 217; State Railroad Tax Cases, 92 U. S., 603; State Tax on Railway Gross Receipts, 15 Wall., 284; Nathan v. Louisiana, 8 How., 73; Cooley on Taxation, 3d ed., 1094, et seq.; Cumberland R. R. Co. v. State, 52 L. R. A., 756; Capital City Water Co. v. Board of Revenue, 107 Ala., 303; Kittanning Coal Co. v. Commonwealth, 79 Pa. St., 100; Albertson v. Wallace, 81 N. C., 479; Merriam v. City of New Orleans, 14 La. Ann., 318; Atlanta Building Assn. v. Stewart, 109 Ga., 80; Kentz v. Mobile, 120 Ala., 623.

The provision that "taxation shall be equal and uniform," found in section 1 of article 8 of the Constitution of Texas, does not apply to the tax under consideration, it being an occupation tax. Const. of Texas, art. 8, sec. 2; Languille v. State, 4 Texas App., 312; Cooley Const. Lim., 619; Phila. Con. Ins. Co. v. Commonwealth, 98 Pa. St., 48; State v. Phila. Ry. Co., 45 Md., 361; Western Union Tel. Co. v. State Board, 80 Ala., 273; Goldsmith v. Huntsville, 120 Ala., 182; People v. Coleman, 4 Cal., 46; Wintz v. Girardey, 31 La. Ann., 381.

The taxes prescribed by the Act are equal and uniform upon the same class of subjects within the limit of the authority levying the tax. Const. of Texas, art. 8, sec. 2; Thompson v. State, 17 Texas App., 256; Clark v. Finley, 93 Texas, 179; Albrecht v. State, 8 Texas App., 216; Languille v. State, 4 Texas App., 312; Texas Banking and Ins. Co. v. State, 42 Texas, 636; Blessing v. Galveston, 42 Texas, 641; Supreme Lodge v. Johnson, 81 S. W. Rep., 18; Mullinix v. State (Texas Crim., 1901), 60 S. W. Rep., 768; Brooks v. State, 58 S. W. Rep., 1032; Pullman Palace Car Co. v. State, 64 Texas, 274; Fahey v. State, 27 Texas App., 146; Ex parte Williams, 31 Texas Crim., 262; State Railroad Tax Cases, 92 U. S., 576; Savannah, etc., Ry. v. Savannah, 198 U. S., 392; People v. Commissioners, 199 U. S., 48, reported in 105 Am. St. Rep., 693; Armour Packing Co. v. Lacy, 200 U. S., 226, 26 Sup. Ct. Rep., 232; Tiedman, Limitations, sec. 101, p. 282; Cooley, Const. Limitations, 12, 87, 138; Cooley on Taxation, 3d ed., pp. 261, 262, 1095; Burroughs on Taxation, secs. 53, 54; McGhee v. State, 92 Ga., 24; Scottish Union Ins. Co. v. Herriott, 109 Iowa, 606; Hodgson v. City of New Orleans, 21 La. Ann., 301; People v. Coleman, 4 Cal., 46, 55; State v. Hammond, 110 La., 186; Lacy v. Packing Co., 134 N. C., 567.

The Act complained of does not place upon oil producers an unjust and arbitrary burden of taxation, denying equal protection of the laws. Languille v. State, 4 Texas App., 323; Ex parte Williams, 31 Texas App., 262; Clegg v. State, 42 Texas, 608; Texas Banking and Ins. Co. v. State, 42 Texas, 640; Thompson v. State, 17 Texas App., 257; McCullough v. Maryland, 4 Wheat., 316; State Tax on Foreign-held Bonds, 15 Wall., 300; Delaware Railroad Tax, 18 Wall., 206; Packing

Co. v. Lacy, 200 U. S., 226, 26 Sup. Ct. Rep., 232; Memphis Gas Light Co. v. Shelby Co., 109 U. S., 398; Steamship Co. v. Pennsylvania, 122 U. S., 336; Cooley on Const. Lim., 508; Gibson Co. v. Pullman Car Co., 42 Fed. Rep., 573; State v. Hayne, 4 S. C., 403; People v. Haws, 34 Barb., 69; People v. Mayor of Brooklyn, 4 N. Y., 419; Knoxville R. Co. v. Harris, 99 Tenn., 684; Insurance Co. v. Commonwealth, 133 Mass., 161; Simmons v. State, 12 Mo., 268.

The Act became effective April 17, 1905, and is applicable from that time, and thus enforced it has no retroactive effect. Sutherland v. De Leon, 1 Texas, 250; De Cordova v. Galveston, 4 Texas, 470; Millinger v. Houston, 68 Texas, 37; White v. Martin, 66 Texas, 340; Acts 29th Leg., chap. 148, p. 359; art. 5243f, Rev. Stats., 1895, sec. 1, and secs. 4 and 18; People v. Flager, 36 U. S. (12 Pet.), 185; McLaughlin v. City of Newark, 30 Atl. Rep., 543; Kirk v. Hartman, 63 Pa. St., 106; Brunswick v. Finney, 54 Ga., 323; Western Union Tel. Co. v. Harris, 52 S. W. Rep., 748; State v. Worth, 116 N. C., 1007; Kelly v. Dyer, 7 Lea, 180; State v. Whittelsey, 50 Pac. Rep., 119.

The Legislatures of Texas have always treated, classified and construed gross receipts taxes as occupation taxes. Art. 7, sec. 27, Constitution of Texas, 1845; art. 7, sec. 27, Constitution of Texas, 1861; art. 7, sec. 27, Constitution of Texas, 1866; art. 7, sec. 27, Constitution of Texas, 1869; art. 8, secs. 1 and 2, Constitution of Texas, 1876; Acts Called Session, 12th Leg., 1870, p. 199; Acts 16th Leg., Gen. Laws, 1879, p. 143; Acts 17th Leg., Gen. Laws, 1881, p. 58; Acts 21st Leg., Gen. Laws, 1889, p. 28; Acts 23d Leg., Gen. Laws, 1893, p. 156; Rev. Stats., 1895, pp. 1019, 1075; Acts 25th Leg., Gen. Laws, 1897, pp. 140, 170; Acts 29th Leg., Gen. Laws, 1905, pp. 374, 427, 336 and 358.

WILLIAMS, ASSOCIATE JUSTICE.—This was an action brought by the plaintiff in error in the District Court of Travis County against the defendants, J. W. Stephens, Comptroller of Public Accounts; J. W. Robbins, State Treasurer; R. V. Davidson, Attorney-General, and J. W. Brady, County Attorney of Travis County, its purpose, generally stated being to obtain an injunction to restrain the defendants from proceeding to enforce against plaintiff the provisions of chapter 148 of the Acts of the Twenty-ninth Legislature, generally called the "Kennedy Bill," by which certain taxes were levied. The complaint was founded upon contentions that the entire Act, and more especially sections 9, 11, 12 and 13 thereof, which more immediately affected the plaintiff, are unconstitutional and void, and also that the defendants, upon an erroneous construction of those sections, were about to proceed to require of plaintiff reports and to charge it with liabilities and subject it to prosecutions and suits not warranted by their provisions.

The defendants took various exceptions to the petition, involving, among others, the propositions that no cause for an injunction against them was shown and that the action was, in effect, one against the State. They, however, affirmatively set up facts upon which they contended that plaintiff was liable to the State under the Act referred to for taxes and prayed for judgment therefor in behalf of the State. In no other way was the State made a party to the proceedings.

Upon final hearing the District Court held the Act valid, and that,

upon a proper construction of its provisions, the plaintiff was liable for some of the sums of money and was not liable for others, which the defendants claimed of it. Judgment was rendered adjudging that the defendants recover of the plaintiff the sums for which plaintiff was held to be held liable, and acquitting it of all other liability. No disposition of the preliminary injunction which had been issued appears, except inferentially, to have been made. The plaintiff appealed to the Court of Civil Appeals, assigning as errors the rulings of the trial court against it, and the defendants filed cross-assignments upon the rulings against them. The Court of Civil Appeals reformed the judgment so as to adjudge a recovery by the State of the sums adjudged below to the defendants, and in all things else affirmed the action of the District Court.

The plaintiff alone has applied for a writ of error, and we are not advised by anything said or done in this court by counsel for defendants whether or not they expect action at our hands upon their cross-assignments presented in the Court of Civil Appeals. We deem it proper to say that, as causes must be brought to this court upon petition for writ of error specifying the grounds upon which the writ is sought, and as our consideration must be confined to the grounds so specified, assignments made in the Court of Civil Appeals, but not embraced in some form in a petition for writ of error, lay no basis for a review by this court of the judgment of the Court of Civil Appeals. Such assignments are looked to only for the purpose of ascertaining whether or not the points made in the petition were raised in the Court of Civil Appeals. The case is therefore before us only upon plaintiff's petition and is so presented as to confine us to the points made therein in reviewing the action of the Court of Civil Appeals.

One of the objections is that the Court of Civil Appeals erred in rendering judgment in favor of the State when the State was not a party to the action, and we must hold that it is well taken. Whether or not the Attorney-General would have been authorized to make the State a party by cross-action to recover the taxes due, we need not decide. He did not assume to do so. The answer is by "the defendants" and they merely pray that the State recover, etc. Nowhere do we find that there was ever an intention on the part of the Attorney-General to make the State a party or to sue in its name.

The idea of the defendants, in pleading as they did, doubtless was to obtain a construction of the statute, determining and declaring the extent of the plaintiff's liability put in issue by the petition in accordance with their own contention; and probably the judgment of the District Court was intended only as an adjudication of these issues. It went too far, however, as was held by the Court of Civil Appeals, in adjudging a recovery by the defendants in the ordinary form of judgments for the recovery of money. The defendants had no such right of action for the taxes as entitled them to such a judgment.

We shall return to the question as to the character of judgment to be rendered after other questions shall have been disposed of.

In its attack upon the validity of the statute the plaintiff has invoked many provisions of the State and Federal Constitutions, and urged many propositions which have so little relevancy that they require

no further notice. We shall confine our attention to those which seem to us to present real questions. One of them is that the sections before referred to, which are the ones applying to the businesses in which plaintiff has been engaged, levy an ad valorem tax upon the value of its property in excess of the rate allowed by the Constitution. This contention has been made with reference to a number of like statutes in this State and has invariably been overruled. (Stephens v. State, 4 Texas, 137; Albrecht v. The State, 8 Texas Ct. App., 216; The State v. Galveston, H. & S. A. R. R. Co., 16 Texas Ct. Rep., 909; 2 Cooley on Taxation, pp. 1094, 1095, 1105, 1106, 1107, 1109 and authorities cited.)

In the case of Producers Oil Co. v. The State, in which this court recently refused a writ of error, the point was made that the tax levied by section 13 of the Act under consideration upon producers of oil was a tax upon property. But the courts below held otherwise, and this court in refusing the writ of error approved the holding. The taxes in the Act are levied because the persons specified are engaged in particular, defined businesses, and are laid upon the carrying on of those businesses. The amounts of the taxes to be paid by those engaged in the businesses are to be ascertained by various standards depending upon the characters of such businesses, but in no instance is a tax laid upon all or any of the property owned by such persons. Had the statute simply defined the businesses and imposed a tax of a fixed sum upon each, no one would have questioned that it was a tax upon the doing of the businesses, in other words, an occupation tax. The fact that the amount of the tax is to be determined, in prescribed methods, from the value, or extent, or magnitude of the businesses done can not convert it into an ad valorem tax upon the property of the persons conducting them. We could only hold that it does by disregarding not only the nature of the provisions themselves and the language in which they are expressed, but the course of judicial decision here and elsewhere and of former legislation in this State, by which such laws have been treated as imposing occupation taxes.

As especial reliance to sustain this contention is placed upon the language of section 9, we may as well discuss it at this point, and, as other questions arise out of it, we set out its material provisions. It provides, that each and every person, association or corporation, "which shall engage . . . in the wholesale business of coal oil, naphtha (sic), benzine or any other mineral oils refined from petroleum, and any and all mineral oils, shall pay an annual tax of two percent upon their gross receipts from any and all sales in this State of any of said articles, . . . and an annual tax of two percent of the cash market value of any and all of said articles that may be received or possessed or handled or disposed of in any manner other than by sale in this State; and it is hereby expressly provided that delivery to or possession by any person, etc., in this State of any of the articles hereinabove mentioned . . . from whatever source the same may have been received, shall for the purpose of this Act, be held and considered such a sale and such ownership and possession of such articles and property (when no sale is made) as will and shall subject the same to the tax herein provided for."

The concluding language quoted is appropriate to the levy of a tax upon the property mentioned, but it is controlled by the leading provision defining the business on the doing of which the tax is imposed. This, when considered in connection with the general scope and purpose of the statute, fixes the character of the tax, and all of the other provisions of section 9 must be viewed as merely dealing with the incidents of the business taxed, and as specifying more fully the elements of value to be taken into account in arriving at the amount charged upon the pursuing of the occupation and as probably intended, also, to prevent evasions. When the character of the business and of the tax upon it are ascertained, the operation of the incidental provisions, inapt as the language is when applied to such a subject, may be in most cases determined without great difficulty. The persons referred to as receiving, possessing, handling or disposing of the specified commodities are those first mentioned as engaged in the wholesale business of oil, etc., from which it follows that the receiving, etc., must be while they are so engaged; that is, as a part or incident of that business. The provision specially relied on as characterizing the tax as one upon the property can not be isolated from those which control its meaning, and when all are considered together, no doubt is left as to their character. It is urged that it is apparent from the statute itself that it is a mere evasion of section 9, article 8, of the Constitution, limiting the rate of taxation upon property to thirty-five cents on the one hundred dollars valuation; but the power to impose taxes on occupations is expressly given by the same article, with no limitation as to their amount or the manner in which it shall be ascertained, and, as we have already shown, the method here employed had been sanctioned by judicial decisions and legislative practice long before the adoption of the present Constitution. The courts have no authority to interfere merely because heavier burdens are imposed than ever before, if that be the fact.

Another objection is that the statute discriminates between plaintiff and others pursuing occupations which belong to the same class, in imposing heavier taxes upon plaintiff than are imposed upon them, and is therefore violative of the Constitution of the State, which provides that "occupation taxes shall be equal and uniform upon the same class of subjects within the limits of the authority levying the tax," and also violative of the fourteenth Amendment of the Constitution of the United States in that it denies to plaintiff the equal protection of the laws. The very language of the Constitution of the State implies power in the Legislature to classify the subjects of occupation taxes and only requires that the tax shall be equal and uniform upon the same class. Persons who, in the most general sense, may be regarded as pursuing the same occupation, as for instance merchants, may thus be divided into classes and the classes may be taxed in different amounts and according to different standards. Merchants may be divided into wholesalers and retailers, and, if there be reasonable grounds, these may be further divided according to the particular classes of business in which they may engage. The considerations upon which such classifications shall be based are primarily within the discretion of the Legislature. The courts, under the provisions relied on, can only inter-

fere when it is made clearly to appear that an attempted classification has no reasonable basis in the nature of the businesses classified, and that the law operates unequally upon subjects between which there is no real difference to justify the separate treatment of them undertaken by the Legislature. This is the rule in applying both the State and Federal Constitutions, and it has been so often stated as to render unnecessary further discussion of it. (The State v. Galveston, H. & S. A. R. R. Co., supra.)

The objection urged along this line is more particularly directed against section 9 because it is said to levy higher taxes upon those engaged in the "wholesale business of oil," etc., than upon others engaged in wholesale businesses of other commodities. This is predicated entirely upon a comparison of the laws levying taxes upon the several classes of business and upon the bare fact that they levy different amounts or by different standards, and is therefore a mere assumption of the true point of controversy, which is, whether or not there was reasonable ground for the discriminations made by the Legislature. We have not been aided by a showing of any facts by which a comparison might be made of the characters of the different businesses and of the conditions under which they are pursued. That there may be differences, affecting the question, between the "wholesale business of oil," etc., and wholesale businesses carried on with other articles of commerce, is obvious. Differences in the profits derived, in the extent of the consumption of the articles and, therefore, in the facility with which the burdens may, in a course of business, be distributed among consumers generally, and other conditions that might be supposed, could properly be taken into consideration by the Legislature in making classifications and determining the amount of the tax to be laid upon each; and it would be only an extreme and a clear case that would justify an interference by the courts with the legislative action. We see nothing of the kind in this law. The mere fact that discrimination is made proves nothing against a classification which is not, on its face, an arbitrary, unreasonable or unreal one.

The attack upon the statute because of the severity of the measures authorized for its enforcement and of the penalties prescribed is met by the fact that the question as to their validity is not now involved. None of them were enforced in this case, and we think it quite clear that they do not affect the right of the State to collect the taxes, themselves, which is all that is now before us.

Other objections may best be considered in construing the several sections of the law to which they relate.

Much is said of the effect of the law in piling up taxes upon the same property in its passage through different processes and its employment in different businesses. Since the taxes are upon occupations and not on property, such complaints, of course, present nothing for the court unless they involve questions as to the power of the Legislature, or as to the construction of the different provisions of the statute. With its alleged iniquity, merely, the court has nothing to do. A little attention, however, to a few obvious propositions will suggest the solution of almost all of the difficulties of this character. The same

person or corporation may carry on several different businesses and, of course, may be taxed in respect of each. But when the Legislature has defined and taxed one business, it is not to be assumed that it has intended to again tax the same business under another name; nor is it to be assumed that it has intended to tax, as a distinct business, that which is a mere incident of another business which has been defined and taxed as a whole.

Sections 9, 11, 12 and 13, under which it was sought to make plaintiff liable, levy taxes upon those engaged in the following businesses: 1. (section 9) The wholesale business of oil, etc. 2. (section 11) The leasing, renting, operating, hiring or charging mileage for the use of various classes of cars, including tank cars. 3. (section 12) Owning or operating pipe lines for various purposes. 4. (section 13) Producing oil from wells.

During the periods in question the plaintiff, in this State, produced crude petroleum from wells upon one tract of land owned by it, and purchased crude petroleum produced by others. Some of this it sold in its crude state, both to consumers and retailers, some at points within the State and some at points without the State. Other crude oils, so purchased and produced, it refined into the various products named in section 9 of the statute and sold these refined products, partly to consumers and partly to retailers, and partly within and partly without the State. These are the facts upon which its liability under section 9 depends. It also during the same periods leased or rented to railroads, for the transportation of oil, its tank cars at the rates fixed by the Railroad Commission of this State. This raised the question under section 11. It also operated pipe lines, transporting the oil of others for hire and also transporting its own oil. For this, upon both kinds of transportation, it was charged with liability under section 12. It also, as stated above, produced oil from its own wells, to which business section 13 applies.

Taking up first the question as to its liability under section 9 we observe that the courts below held that it was not liable for sales of oil in its crude state, whether purchased or produced by it, this upon a construction of section 9 that its language includes only products refined from petroleum and not the crude oil. So that the question which is left is as to plaintiff's liability to be charged in respect of the sale of such refined products. Its first contention is, that when the caption of the statute and section 9 are construed together, the tax is found to be imposed only on wholesale *dealers,* and that it was not such in any proper sense of the phrase.

The caption of the Act, so far as it is necessary to quote, entitles it an Act for the levy and collection upon individuals, etc., "owning, operating, managing or controlling for profit . . . the business of . . . wholesale dealers in coal oil," etc.

Section 9 requires only that those upon whom the tax is imposed shall "engage in . . . the wholesale business of oil," etc., and adds the other provisions specifying the elements to be taken into consideration in arriving at the value or basis for estimating the amount to be charged.

The word, wholesale, accurately imports a selling, and "to sell by

wholesale, is to sell by large parcels, generally in original packages and not by retail." (Bouvier.) The word is defined by the International Dictionary as the "sale of goods by the piece or large quantities, as distinguished from retail," and this is its accurate popular meaning. The words used in section 9 therefore require nothing more than the engaging in the business of selling in the way properly designated by the word, "wholesale," as thus defined. But it is urged that we must add the word "dealer" taken from the caption so as to define the business as that of wholesale dealer, which may be granted; and it is then argued that by judicial interpretation a dealer is one who buys to sell again, and not one who buys to keep or produces to sell; that both the elements of buying and selling must be present to constitute the business of a dealer. Decisions are cited which hold that such was the meaning of the word as employed in statutes undergoing interpretation, and all of them are probably sound, as constructions of those statutes. Some of them say that such is its popular meaning and, therefore, its legal meaning in a statute, unless there be something else to control. But certainly that is not its only popular use, nor do the decisions referred to so hold, and we doubt if it is most commonly so limited in actual use. The law attaches no absolute signification to the word, less than such as it may properly have in general use. It is quite plain that the statute in question, when it describes the business intended as "the wholesale business of oil" and, by way of caution, adds the other provisions above set out, which, in effect, make it immaterial how the possession, etc., of the commodities may have been obtained, does not mean a business so restricted as the definition, which is contended for, of the word "dealer" would make it. But it is said that the section 9, unless so construed, would embrace subjects not covered by the caption and violate the Constitution. This assumes that the words in the caption could have no other meaning than that ascribed to them in this contention and that it was out of the power of the Legislature to define, in the body of the Act, the sense in which those words were employed in the caption. It seems clear that the terms "business of wholesale dealer," in the title were sufficient to point attention to any admissible definition of the business intended that might be introduced into the body of the Act. It may be true that, under a caption expressed in such specific language, it would not have been permissible to tax a business which no sense of that language could be made to embrace, but that is not what this statute attempts. In our opinion, the word, dealer, as accurately applies, according to popular use, to one engaged as must be those described in section 9 as to one who buys to sell again. One who acquires, possesses, handles and sells oil may properly be said to deal in oil whether he has bought it to sell again or not.

It will be seen that the plaintiff buys crude oil, refines it into the different products and sells those products. We can perceive no sound reason for holding that to this extent, at least, plaintiff is not a wholesale dealer according to its own definition. The fact that the commodity is separated into different articles and is improved and rendered fit for more enlarged uses, after purchase of the crude oil and before sale of the refined product, should have no decisive influence

upon the applicability of this statute, even if it were necessary that the plaintiff should be found to be a dealer in the sense contended for. Were we to hold that, in refining and selling the oil produced by itself plaintiff is not a dealer in such oil, it would still be true that in carrying on the other part of its business, in buying and refining crude oil and in selling the refined product, it would be a dealer, taxable as such; and there is good authority for the proposition that in ascertaining the amount of the tax applicable to such business the entire amount of its sales from its entire stock thus made up should be taken into account. (Union Oil Co. v. Marrero, 52 La. Ann., 357.) But as we have seen, no such interpretation of the statute is permissible. The plaintiff's entire wholesale business in the commodities mentioned in section 9 falls within its terms.

This involves the question as to plaintiff's liability to be charged in respect of sales of articles refined from oil produced by it. As we have before indicated, the tax is not laid upon the doing of that which is nothing more than an incident of another business defined and taxed. The business of producing oil is so defined and taxed, and a necessary incident of such business is the selling of the product. The doing of this by wholesale is as much an incident as the selling by retail; and we are not prepared to hold that the mere refining of the oil by the producer before selling would alter the case. But the plaintiff's business of selling is more than that. It procures the stock of crude oil by production and purchase, refines it, indiscriminately, and thus obtains its stock of refined products with which it conducts a wholesale business in coal oil, naphtha, etc. It thus brings itself within the very terms of the statute. (Union Oil Co. v. Marrero, supra.) The provisions of section 9 concerning articles received, possessed, handled, or disposed of otherwise than by sale, and that concerning delivery to or possession by any person, etc., of such articles, were intended both to indicate the character and scope of the wholesale business to be taxed and the values to be taken into account in determining the amount of the tax, and they leave no doubt of the correctness of the conclusion just announced, if the preceding language would admit of any. Difficulties might be presented by the facts of particular cases in determining the property to be considered under the special provisions just referred to, in estimating the amount of the tax, but none such arise in this case, the court below having based its estimate on sales only. Those provisions clearly reveal the intention of the Legislature with respect to the character of the wholesale business which is taxed.

With reference to the contention that plaintiff's business, insofar as it consisted of sales and deliveries out of the State, was not within the taxing power of the Legislature, we deem it sufficient to say that the occupation taxed was carried on wholly within the State and that occupation is the subject of the tax. Particular sales are not taxed, the volume of the business being consulted merely to determine the amount of the tax upon the occupation. The commerce clause of the Constitution of the United States does not apply to the case. (Ficklin v. Shelby County, 145 U. S., 21.)

Sales to consumers may be by wholesale, in the sense of this statute, as well as sales to retailers, and the court below did not err in holding

that the tax was to be estimated with reference to all such sales. This disposes of all questions arising under section 9 of the Act.

The judgment of the District Court exempted the plaintiff from liability under section 11 concerning tank cars, and no question is before us as to the correctness of that holding.

Section 12 declares that "every individual, joint stock association, company, copartnership or corporation . . . which owns or operates a pipe line or lines within the State of Texas, whether such pipe lines be used for the transmission of oil, natural or artificial gas, whether the same be for illuminating or fuel purposes or for any other purpose, or for steam, for heat or power, or for the transmission of articles by pneumatic or other power, shall be deemed and held to be a pipe line company." It then requires quarterly reports, showing charges and freights within this State paid to or uncollected by such pipe line company, or account of any business transacted by it in the capacity of a pipe line company as defined; and that each pipe line company engaged in conveying oil shall report, as a part of its gross receipts, such sums as it would have been compelled to pay for conveying oil owned by it and conveyed for itself if it had employed some other pipe line company to convey it. It then requires the payment of two percent on the gross receipts as shown by such report. It is easily deduced from all of the provisions, together, that the tax is levied upon those engaged in the business of transportation by pipe lines for others for hire or profit, and the title of the Act re-enforces this idea, in that all of the businesses specified in it are to be conducted for profit. To all such section 12 applies; and the position can not be maintained that it exempts from the burden imposed any business of the same class, that is, such as are engaged in serving the public for hire. There is no doubt that those carrying on such businesses may be properly classified for taxation, apart from the owners of different businesses who, as an incident of their businesses, use pipe lines to transport exclusively their own commodities. The plaintiff falls within the class designated in the Act, and the fact that owners of private businesses, employing pipe lines for their own purposes, are not also subjected to the tax, raises no constitutional objection. (American Sugar Refining Co. v. Seibert, 179 U. S., 94; Pacific Express Co. v. Seibert, 142 U. S., 339; The State v. Galveston, H. & S. A. R. R. Co., supra.)

A more difficult question arises from the provision that, in the amount upon which the occupation tax is to be calculated as against companies transporting oil, there is to be included not only the amount received for service rendered to others, but also a sum calculated as the cost of transporting their own oil, the difficulty being in the fact that the last named imposition is not placed upon the owners of any of the other pipe line businesses mentioned in the twelfth section. This being only a method of arriving at the amount to be charged upon the occupation of transporting for hire, we can perceive no constitutional objection against the mere inclusion of the element mentioned in ascertaining the scope of the business. The Legislature might have thought, not unreasonably, that the value of the entire use made of his pipe lines by one holding himself out as transporting goods for the public should be looked to, and that this included the benefits

resulting from the use in his own business as well from the use in the service of the public.

But if this was the idea, it was adopted with reference to companies transporting oil only, and there is an apparent discrimination against them. The difficulties in the way of sustaining the plaintiff's contention, that this is not a permissible discrimination, are twofold. In the first place, it is not made to appear, and we do not know judicially that there are in the State any of the other companies or persons transporting the other things mentioned who do not also transport oil. In other words, it is not shown that there is in fact any discrimination between plaintiff and others. In the second place, there is the question of classification to which we have before alluded. The fact that all persons, etc., owning or controlling pipe lines are included in the first part of the section and are taxed as a class, does not, as plaintiff's counsel seem to argue, preclude further classification and the application of differing rules among them. That is what is done, in effect by the provision in question when it makes a special rule applicable only to those transporting oil; and the contention, if all the necessary facts were shown, would come back to the question as to whether or not such classification is based upon some real difference between the businesses, or is arbitrary and capricious merely. We can not say, as the cause is presented to us, that the business of piping oil, partly for the public and partly for the owner of the line, does not differ so substantially from the businesses of so transporting the other things as to furnish reason for the application of different rules to them.

We can not see the force of plaintiff's contention that the provision in question can not be applied to it because it has no connections between its pipe lines and those of others carrying oil for hire and therefore could not have employed the lines of others. The provision merely intends to get at the basis for estimating the occupation tax and, for that purpose, prescribes a standard for ascertaining the value of the use the owner has made for his own purposes of his pipe lines also engaged in the service of the public.

The propositions attacking the validity of the tax laid by section 13 upon those producing oil from oil wells have been heretofore considered by this court in refusing the writ of error in the case of the Producers Company referred to in the early part of this opinion. We shall not consume further time in discussion. The contentions on this branch of the case are all met by the propositions that the taking of oil from oil wells, as conducted by plaintiff and others so engaged, is a business subject to be taxed; that such business is sufficiently indicated in the statute, and the tax is imposed upon it as an occupation tax and not as a tax upon land, or oil, or property of any kind.

The contention that the Kennedy bill did not take effect before July 1, 1905, so as to impose liability for the taxes for such part of the preceding quarter as elapsed after April 17, of that year, can not be sustained. The bill was passed with the emergency clause and by the requisite vote to put it in force upon its passage and, having been approved on April 17, it went into effect at once as a law. Of course it is true, as contended, that the time when taxes became due under it is to be ascertained from the intention manifested by its provisions.

It fixes the first quarter as beginning April 1, but its passage through the Legislature having been delayed until that time had passed, it could not operate during the interval from April 1 to April 17. The intention was clearly manifested, however, by its history and by the emergency clause that it should become effective as a revenue producing measure as soon as it could be enacted, and there is nothing in the facts stated to prevent that intention from controlling. (The State v. Galveston, H. & S. A. R. R. Co., supra.)

This disposes of all the objections, deserving discussion, to the action of the District Court and Court of Civil Appeals and it remains only to determine the proper judgment to be rendered by this court. The issues made in the District Court involved the determination of the extent of the liability of the plaintiff, and that was done by the judgment, the particular sums collectible being clearly stated therein. The proper judgment to give effect to the rulings of the court would have been to so far dissolve the injunction previously granted as to allow the defendants to proceed with the collection of such sums, and to perpetuate the writ as to all the others in issue; and that will be the judgment of this court.

No question has been made here as to the sufficiency of plaintiff's allegations to entitle it to an injunction and we shall not discuss that question. We may remark, however, that the case is different in some important respects from that of Stephens v. Railway (16 Texas Ct. Rep., 918). Both the District Court and the Court of Civil Appeals held the plaintiff liable for all costs, and we discover no complaint of such holdings in the petition for writ of error and it need not be discussed. The judgment of this court will accordingly be in favor of the defendants for all costs except those of the writ of error from the Court of Civil Appeals to this court which will be adjudged against the defendants in error.

*Reformed and rendered.*